UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES RUDOLPH THOMAS,

       Plaintiff,

                                                               Case No. 1:24-cv-82

v.

                                                               Honorable Jane M. Beckering

LAURA HEINRITZ et al.,

       Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order.

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. FED. R. CIV. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendants Gentry and Dunigan and dismiss Plaintiff's claims against these Defendants without prejudice.

Plaintiff's claims against remaining Defendants Heinritz and Fager are presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as

true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Heinritz and Fager for failure to state a claim upon which relief may be granted. Because Plaintiff's complaint is properly dismissed, the Court will deny Plaintiff's motion to serve the complaint. (ECF No. 3.)

## Discussion

**I.      Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. He is serving a life sentence following his 1978 guilty plea in the Wayne County Circuit Court to charges of assault with intent to murder and second-degree murder. He is presently housed in long-term protective custody.

Plaintiff's complaint includes two distinct factual accounts. The first account centers on Plaintiff's designation as a sexually aggressive prisoner. The significant events relating to that account occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan, the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan, and the E. C. Brooks Correctional Facility (LRF) in Muskegon, Muskegon County, Michigan. Plaintiff's claims relating to the sexually aggressive designation name as defendants MDOC Correctional Facilities Administration Classification Director Laura Heinritz and LRF Residential Unit Manager (RUM) Unknown Fager.

The second account relates to a failure to protect Plaintiff while he was housed at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan, and the Richard A. Handlon Correctional Facility (MTU), in Ionia, Ionia County, Michigan. Plaintiff's claims relating to the

"failure to protect" name as defendants RMI Assistant Deputy Warden James Dunigan and RMI Prison Counselor Dillon Gentry.

### A.  Sexual Misconduct and the Sexually Aggressive Designation

Plaintiff's allegations begin on November 12, 2021, when he was incarcerated at MCF. On that date, Plaintiff was issued a sexual assault misconduct relating to an incident on September 28, 2021. Plaintiff reports that, on November 23, 2021, an administrative law judge issued a hearing report that found the incident was consensual. Under the MDOC's definition of sexual assault, consensual sexual activity is not sexual assault. Plaintiff states that the administrative law judge found that there was no sexual assault. Plaintiff is otherwise silent with regard to the content of the hearing report.

The Court notes that under the MDOC disciplinary system, sexual assault is not the only Class I misconduct relating to sexual activity. MDOC Policy Directive 03.03.105, Prisoner Discipline, Attachment A, Class I Misconduct (Eff. Oct. 2, 2023).[1] There is a separate offense, identified as sexual misconduct, that includes consensual sexual touching. *Id*. Thus, based on

---

[1] Plaintiff's references in the complaint to MDOC misconduct violations and the MDOC's determination that Plaintiff was sexually aggressive are easily understood by prisoners because they deal with the MDOC's rules and directives every day and by the Court because of the proliferation of prisoner litigation. But that understanding flows from familiarity with the MDOC policy directives that give meaning to those terms. When the Court conducts a preliminary review pursuant to the PLRA, it is applying the same standard—failure to state a claim—that the Court applies in resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). In ruling on such a motion, the Court "may consider material in addition to the complaint, even if not attached, if such materials are public records or are otherwise materials appropriate for the taking of judicial notice." *Mobley v. Smith*, No. 4:05-cv-153, 2007 WL 1650934, at *3 n.3 (W.D. Mich. June 4, 2007). "The MDOC's policy directives are a proper subject of judicial notice under Fed. R. Evid. 201(b)." *Id*. (citing *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2007)). The rules, regulations, and policy directives of the MDOC "may be a proper fact for judicial notice if [they] are offered to establish the factual context of the case, as opposed to stating the governing law." *Toth*, 306 F.3d at 349. The Court takes judicial notice of the MDOC policy directives regarding prisoner discipline and sexual abuse and sexual harassment to provide necessary factual context for the allegations in Plaintiff's complaint.

3

Plaintiff's allegations, his conduct still warranted disciplinary sanctions for sexual misconduct. The fact that any sexual touching is inappropriate under the MDOC rules is of some significance in evaluating the rest of Plaintiff's allegations because it might directly translate to the subsequent determination that Plaintiff was sexually aggressive.

Four months later, while Plaintiff was incarcerated at security level II at MRF, a security classification screen completed by non-parties Dashawn Vann and Kristopher Steece designated Plaintiff as sexually aggressive. Plaintiff had not previously been designated as being sexually aggressive.

Plaintiff's reference to a determination that he was "sexually aggressive" is a reference to his "score" under the Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301 *et seq.*[2] MDOC Policy Directive 03.03.140, Sexual Abuse and Sexual Harassment of Prisoners-Prison Rape Elimination Act (PREA) (eff. Apr. 5, 2021), and the PREA Manual for the MDOC, reflect the national standards. The MDOC policy directive requires that all prisoners be assessed upon intake, upon transfer to a new facility, and "[w]henever warranted due to a referral, request, incident of sexual abuse, or receipt of additional information that may increase the prisoner's risk of being sexually abused by other prisoners or being sexually abusive toward other prisoners." MDOC Policy Directive 03.03.140 ¶ LL (eff. Apr. 5, 2021). The results of the risk assessment are a PREA-Aggressor Risk score and/or a PREA-Victim Risk score. Those scores must be considered when

---

[2] The PREA, as the title suggests, is intended to reduce the incidence of prison sexual assaults. One of the key purposes of the PREA was the development and implementation of national standards for the detection, prevention, reduction, and punishment of prison rape. 34 U.S.C. § 30302. The PREA directed the United States Attorney General to publish a rule adopting a national standard for the detection, prevention, reduction, and punishment of prison rape and then tied funding to the state to compliance with the national standards. *Id.* § 30307. The national standards are set forth in 28 C.F.R. Ch. I, Pt. 115.

4

making housing, bed, work, education, and program assignments. *Id*. Because of the new assessment at MRF, Plaintiff was transferred to security level IV at RMI.

### B.    Failure to Protect Plaintiff

Shortly after the transfer to RMI, on April 13, 2022, Plaintiff was assaulted. He sustained a broken leg and a dislocated ankle. He was thereafter placed in involuntary protective custody.

The day of the assault, Defendant Dillon Gentry completed a report relating to Plaintiff's protected status. Plaintiff notes that Gentry did not speak with Plaintiff before completing the report. Plaintiff contends that the report contained false and inaccurate information. For example, according to the report, Plaintiff said that he "was a vice lord" and that there was an "execute on [sight]" hit on plaintiff. (Compl., ECF No. 1, PageID.4.)

Plaintiff states that the report was sent to another prisoner in Plaintiff's housing unit— Plaintiff does not indicate who disseminated the report. Other prisoners read and passed around the report. The other prisoners harassed and threatened Plaintiff.

After Plaintiff was threatened, he spoke with Defendant Dunigan. Plaintiff told Dunigan about the "false" sexually aggressive designation, the resulting improper security designation, the assault, and the inaccurate protection report that was given to another prisoner.

On April 18, 2022, a corrected classification screen was issued removing the sexually aggressive designation.[3] Plaintiff then wrote Defendant Dunigan explaining that his injuries would leave him unable to protect himself. He requested placement in a long-term protective custody unit. Dunigan indicated that Plaintiff's protection status was upheld and that he would be transferred.

---

[3] Plaintiff mentioned the sexually aggressive designation to Defendant Dunigan and Dunigan apparently had the designation removed. Plaintiff does not contend that Defendant Dunigan (or Defendant Gentry) is liable for any damage resulting from the sexually aggressive designation.

5

Plaintiff was transferred to MTU. But instead of going into protective custody, he was sent to a level II general population unit. Plaintiff reports that the rumors based on Gentry's inaccurate report circulated at MTU. On June 3, 2022, he was beaten by his cellmate with Plaintiff's own crutches causing significant injuries and requiring multiple surgeries. Plaintiff attributes the assault to the rumors.

The assault was investigated, but Plaintiff was denied long term placement in protective custody. Instead, he was transferred to another level II general population unit at LRF.

### C. Sexually Aggressive Designation Assigned Again

Plaintiff remained at LRF without incident until April 11, 2023, when Defendant Fager informed Plaintiff that Fager was placing Plaintiff on single-cell status and was designating Plaintiff as a sexually aggressive inmate. Plaintiff grieved the decision. The step 1 response to that grievance indicated that Defendant Heinritz issued a memo on April 25, 2023, classifying Plaintiff as sexually aggressive and placing him on single-cell status. When Plaintiff was the subject of a new classification screen on July 11, 2023, the sexually aggressive designation prompted a transfer back to a level IV placement, this time at IBC.

### D. False Protection Report Surfaces Again

At IBC, Plaintiff claims he was threatened—again attributing the threat to rumors based on the Gentry protection report. Plaintiff requested protection and he was transferred to a long-term placement in protective custody.

### E. Relief Sought

Plaintiff asks the Court to direct Defendants to remove the sexually aggressive designation from Plaintiff's files and to award damages for the harm Defendants have caused him.

**II.     Misjoinder**

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." FED. R. CIV. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*,

7

661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA). To allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his

8

claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Heinritz is the first Defendant named in the case caption of the complaint and in Plaintiff's list of Defendants in the body of his complaint.[4] (*See* Compl., ECF No. 1, PageID.1, 2.) Plaintiff's claims against Defendant Heinritz relate to her involvement with the sexually aggressive designation while Plaintiff was incarcerated at LRF. The sexual assault misconduct, which Plaintiff suggests served as the foundation for the initial designation, is also chronologically the first event alleged in Plaintiff's complaint. Plaintiff's allegations against Defendant Fager occurred at the same time as the allegations against Defendant Heinritz. The allegations against both Defendants occurred while Plaintiff was housed at LRF during 2023. Plaintiff's allegations against Defendants Heinritz and Fager are transactionally related.

Plaintiff's allegations against Defendants Gentry and Dunigan, on the other hand, are transactionally *unrelated* to Plaintiff's allegations regarding the "sexually aggressive" designation. The events at issue in Plaintiff's claims against Defendants Dunigan and Gentry occurred at different places—RMI and MTU—and at different times—the spring of 2022. Plaintiff's claims against Dunigan and Gentry rely on entirely different facts and involve entirely different constitutional violations.

It appears Plaintiff believes that all of the events set forth in the complaint are related simply because they all occurred at some point during the three-year period preceding his complaint. That belief, however, does not transform separate, subsequent events into events that arise out of the same transaction or occurrence. Instead, Plaintiff's allegations against Defendants

---

[4] The analysis of joinder must start somewhere. By accepting the first-named Defendant and the factual allegations against the first-named Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

9

Gentry and Dunigan regarding the failure to protect Plaintiff from the consequences of the false protection report at RMI and MTU are transactionally unrelated to the purportedly inaccurate "sexually aggressive" designation assessed by Defendants Heinritz and/or Fager while Plaintiff was housed at LRF.

Accordingly, the Court concludes that Plaintiff's claims against Defendants Heinritz and Fager are properly joined because these claims arise out of the same transaction and occurrence. However, Plaintiff has improperly joined Defendants Gentry and Dunigan.

Because the Court has concluded that Plaintiff has improperly joined Defendants Gentry and Dunigan to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." FED. R. CIV. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting

*Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Plaintiff states Gentry and Dunigan violated Plaintiff's Eighth Amendment rights and Fourteenth Amendment equal protection rights beginning in the spring of 2022. (*See* Compl., ECF No. 1, PageID.5–6.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the misjoined Defendants, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if claims against the misjoined Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Gentry and Dunigan because they are misjoined, and the Court will dismiss Plaintiff's claims against the misjoined Defendants without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."). If Plaintiff wishes to proceed with his claims against the misjoined Defendants, he may do so by filing a new civil action on the form provided by this Court, *see* W.D.

Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*.

### III.     Failure to State a Claim

Plaintiff's claims against Defendants Heinritz and Fager remain to be reviewed under the PLRA. A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges that Defendants Heinritz and Fager have violated Plaintiff's Fourteenth Amendment due process rights and equal protection rights.

### A. Due Process

Plaintiff contends that Defendants Fager and Heinritz failed to provide Plaintiff with an opportunity to be heard before designating Plaintiff as a sexually aggressive person and, therefore, violated Plaintiff's right to due process under the Fourteenth Amendment. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Plaintiff has failed to state a claim for violation of his due process rights because he does not have a protected interest in being classified at a particular PREA-Aggressor Risk score.

The PREA-Aggressor Risk score, because it is used to determine "housing, bed, work, education, and program assignments" is a form of security classification or program classification. MDOC Policy Directive 03.03.140 ¶ LL (eff. Apr. 5, 2021). The Supreme Court and the Sixth Circuit Court of Appeals have repeatedly concluded that a prisoner does not have any liberty interest in placement in any particular security classification or housing assignment or program participation or prison employment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (noting that "no due process protections were required upon the discretionary transfer of state

13

prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate," and "[t]he same is true of prisoner classification and eligibility for rehabilitative programs"); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (stating that "a prisoner has no constitutional right to remain incarcerated in a particular prison or to beheld in a specific security classification"); *Argue v. Hoffmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (concluding that prisoner "failed to state a due process claim with respect to his program classification [because p]risoners have no constitutional right to rehabilitation, education, or jobs"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (concluding that plaintiff has no "inherent constitutional right to placement in any particular security classification or housing assignment" and "no constitutional right to prison employment or a particular prison job").

Even though some change in the conditions of Plaintiff's confinement may have been caused by the change in his PREA-Aggressor Risk score, the United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). The only changes identified by Plaintiff were the move to a single cell at LRF and then the transfer to a level IV facility. Plaintiff alleges no facts from which the Court might infer that these changes affected the duration of his sentence or

14

imposed an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. Accordingly, the Court concludes that Plaintiff has failed to state a due process claim against Defendants Heinritz or Fager.

### B. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. To state an equal protection claim, a plaintiff "must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). The entirety of Plaintiff's equal protection allegations against Defendants Heinritz and Fager reads as follows:

> 32)  Defendants Fager and Heinritz failure to provide plaintiff an opportunity to be heard before designating plaintiff as a sexually aggressive person deprived plaintiff of rights and privileges normally given to prisoners in similarly situated circumstances. . . .
>
> 33)  Defendants Fager and Heinritz acts and omissions have deprived plaintiff of the full and equal enjoyment of the respective prison facilities and the laws thereof.
>
> * * *
>
> 35)  Defendants Fager and Heinritz actions to designate plaintiff as a sexually aggressive inmate then place plaintiff on a single cell status without provocation or incident constitutes violations of plaintiff[']s equal enjoyment of the laws under the [F]ourteenth Amendment to the United States Constitution. Defendants Fager and Heinritz actions were not related to an important and legitimate government interest.

(Compl., ECF No. 1, PageID.6, 7 (grammar and lack of punctuation in original).) Plaintiff has not identified a fundamental right burdened by the PREA-Aggressor Risk score. Plaintiff has also not claimed that he has been targeted as a member of a suspect class. Plaintiff at least uses the words

15

"similarly situated." The Supreme Court has also recognized what is referred to as a "class-of-one" equal protection claims in which the plaintiff does not allege membership in a particular class or group, but instead alleges that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Davis v. Prison Health Services*, 679 F.3d 433, 441 (6th Cir. 2012).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). To state an equal protection claim, Plaintiff must allege facts that support his allegation that others were treated differently than he was and he must allege facts that would support the inference that those who were treated differently were similarly situated in all relevant respects. *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) ("To be a similarly-situated [person], the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'" (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998))); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) ("Plaintiffs . . . fail to plead the existence of a similarly situated comparator . . . [therefore,] the Complaint does not contain sufficient factual matter to state a plausible claim."). Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others, much less that the others were similarly situated.[5] Instead, any allegations of discriminatory treatment are wholly

---

[5] It appears that alleging facts to identify a similarly situated comparator is particularly difficult for plaintiffs attempting to demonstrate a "class of one" equal protection claim based on a PREA score. *See, e.g., Johnson v. Washington*, No. 22-12360, 2022 WL 11964489, at *3 (E.D. Mich. Oct. 20, 2022) (stating "Johnson's complaint does not identify any other incarcerated people who were allowed to be POAs despite their PREA scores or who were given a different PREA score

conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's Fourteenth Amendment equal protection claims will be dismissed.

## IV.    Plaintiff's Motion to Serve the Complaint

Because Plaintiff's complaint against Defendants Heinritz and Fager is properly dismissed, the Court will deny Plaintiff's motion to serve the complaint. (ECF No. 3.)

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act and permitted by Federal Rule of Civil Procedure 21, the Court determines that Defendants Gentry and Dunigan are misjoined. Accordingly, the Court will drop Defendants Gentry and Dunigan from this action and dismiss Plaintiff's claims against them without prejudice. With regard to properly joined Defendants Heinritz and Fager, Plaintiff's claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's motion to serve the complaint.

Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is

---

though they were similar in relevant aspects to Johnson"); *Moore v. Erickson*, No. 2:20-cv-219, 2021 WL 302616, at *6 (W.D. Mich. Jan. 29, 2021) (noting that Plaintiff utterly fails to identify any similarly situated comparator; he states no facts to indicate that any individual prisoner was similar in all relevant respects").

17

barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:     March 4, 2024                              /s/ Jane M. Beckering
                                                      Jane M. Beckering
                                                      United States District Judge